1

2              IN THE UNITED STATES DISTRICT COURT

3            FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6    STAHL LAW FIRM, et al.,

7                            Plaintiffs,          NO. C13-1668 TEH

8                  v.                             ORDER DISMISSING CASE
                                                 FOR LACK OF STANDING
9    JUDICATE WEST, et al.,

10                          Defendants.

11

12          This matter came before the Court on August 26, 2013, on Defendants' motions to

13   dismiss and motions for attorneys' fees as prevailing parties under California's anti-SLAPP

14   statute.  After carefully considering the parties' written and oral arguments, the parties'

15   answers to questions distributed prior to oral argument, the allegations in the First Amended

16   Complaint, and relevant law, the Court now *sua sponte* DISMISSES Plaintiff's First

17   Amended Complaint for lack of Article III standing pursuant to Federal Rule of Civil

18   Procedure 12(b)(1).  The Court does not rule on Defendants motions for attorneys' fees at

19   this time because the Court does not have the authority to award attorneys' fees in an

20   underlying suit over which it has no jurisdiction.

21

22   **BACKGROUND**

23          On April 12, 2013, Plaintiff Stahl Law Firm and attorney Norbert Stahl (collectively,

24   "Plaintiff") filed suit against Defendants Judicate West and Judge Vincent Di Figlia (Ret.)

25   (collectively, "Defendants").  Docket No. 1.  Plaintiff's complaint included four causes of

26   action: unfair competition under the Lanham Act, 15 U.S.C. § 1125; unfair competition

27   under California Business and Professions Code sections 17200 *et seq*.; fraud; and

28   negligence.  *Id.*

*United States District Court*
For the Northern District of California

On June 21, 2013, Defendants filed special motions to strike Plaintiff's state law claims under California's anti-SLAPP statute, California Code of Civil Procedure section 425.16. Docket Nos. 15, 19. Defendants also moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] *Id.* Plaintiff did not oppose the special motions to strike or the motions to dismiss. Rather, on June 25, 2013, Plaintiff filed the First Amended Complaint ("FAC"), which eliminated the California causes of action and retained only the federal cause of action for false advertising under the Lanham Act, 15 U.S.C. § 1125. Docket No. 26.

The FAC alleges that Defendant Judicate West is a provider of private dispute resolution services and sponsors neutrals, including retired judges such as Defendant Di Figlia, to serve as mediators and arbitrators. FAC ¶¶ 7-14. The gravamen of Plaintiff's Lanham Act claim is that both Defendants misrepresented their qualifications, experience, and reputation by failing to reveal in advertising or on Judicate West's website a January 9, 2007 opinion of the Commission on Judicial Performance in which Di Figlia was issued a public admonishment. *Id.* ¶¶ 21-41.

On July 5, 2013, Defendants withdrew their motions to strike and dismiss the original complaint. Docket Nos. 31, 32. On July 9, 2013, Defendant Di Figlia moved to dismiss the FAC or change venue to the Southern District of California. Docket No. 33. On July 12, 2013, Defendant Judicate West also moved to dismiss the FAC. Docket No. 35. Defendants additionally filed motions for attorneys' fees as the prevailing party on their previously filed (and withdrawn) special motions to strike pursuant to the California anti-SLAPP statute. Docket Nos. 39, 42. The Court heard argument on all motions on August 26, 2013.

//
//
//
//

[1]All references to Rules hereinafter refer to the Federal Rules of Civil Procedure unless otherwise specified.

**United States District Court**
For the Northern District of California

1    **DISCUSSION**

2    **I.      Article III Standing**

3           The Court has an "independent obligation to examine standing to determine whether it

4    comports with the case or controversy requirement of Article III, Section 2 of the

5    Constitution." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). "The

6    jurisdictional question of standing precedes, and does not require, analysis of the merits."

7    *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1189 n.10 (9th Cir.

8    2008); *see also Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor*

9    *Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) ("Standing is the threshold issue of any

10   federal action. . . ."). Because federal courts are required to examine jurisdictional issues

11   such as standing regardless of whether the parties raise the issue, the Court has "both the

12   power and the duty to raise the adequacy of [the plaintiff's] standing sua sponte." *Bernhardt*

13   *v. Cnty. of Los Angeles,* 279 F.3d 862, 868 (9th Cir. 2001). "[L]ack of Article III standing

14   requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil

15   Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

16          The plaintiff has the burden of establishing Article III standing. *See Thompson v.*

17   *McCombe,* 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's

18   jurisdiction has the burden of proving the actual existence of subject matter jurisdiction.").

19   To meet that burden, the plaintiff  "must establish 'the irreducible constitutional minimum of

20   standing,' consisting of three elements: injury in fact, causation, and a likelihood that a

21   favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d

22   775, 785 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61

23   (1992)). To establish an injury in fact, the plaintiff must show that he or she has suffered "an

24   invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual

25   or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

26          "In a false advertising suit, a plaintiff establishes Article III injury if some consumers

27   who bought the defendant's product under a mistaken belief fostered by the defendant would

28   have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653

F.3d 820, 825 (9th Cir. 2011) (internal quotations and citation omitted).  Evidence of "*direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't 'conjectural' or 'hypothetical.'*"  *Id.* at 825-26 (citing *Lujan*, 504 U.S. at 560) (emphasis added).  Thus, plaintiffs may establish standing through evidence that they "compete with defendants for . . . revenue," such that "[s]ales gained by one are thus likely to come at the other's expense."  *Id.* at 826.  The plaintiff can also rely on "actual market experience," including lost sales data or "probable market behavior," that establishes a likely injury by "creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business."  *Id.* at 825 (internal quotations and citations omitted).

When determining whether to dismiss a complaint for lack of Article III standing, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party."  *Maya,* 658 F.3d at 1068 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Id.* (citing *Lujan*, 504 U.S. at 561).  However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact."  *Id.*; *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954–55 & n.9 (9th Cir. 2011) (en banc) (holding that a plaintiff who did not allege which barriers existed at a store and how they impacted his disability could not establish injury in fact simply by claiming that the store deprived him of "full and equal" access in violation of the Americans with Disabilities Act).

Here, Plaintiff's bid for Article III standing fails because the FAC rests only on bare legal conclusions; Plaintiff fails to allege any facts showing he competes with Defendants for the same business or how he could be harmed by Defendants' alleged false advertising. Plaintiff makes only conclusory allegations that "Plaintiffs and Defendants compete for providing legal services" and that Defendants "have made false and misleading statements about their services that harmed Plaintiffs' ability to compete."  FAC ¶¶ 44-45.  He alleges that Judicate West describes itself as a "leading provider of dispute resolution services

[which] features a highly select panel of neutrals, including judges retired from all levels of the courts and a broad cross-section of skilled professional attorney mediators and arbitrators," *id.* ¶ 10, but nowhere does he allege the type of "legal services" he provides. Thus, the FAC lacks any factual allegations that Plaintiff actually competes with Defendants to provide alternative dispute resolution services or that he competes or intends to compete with Defendants for the same pool of customers – i.e., those seeking to purchase alternative dispute resolution services. In short, Plaintiff fails to plead any facts showing that "some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *TrafficSchool.com*, 653 F.3d at 825 (internal quotations omitted). Similarly, Plaintiff nowhere pleads a "chain of inferences" showing how Defendants' alleged misrepresentations related to the provision of alternative dispute resolution services could possibly cause competitive harm to his provision of legal services. *TrafficSchool.com*, 653 F.3d at 825. On a false advertising claim, Article III injury requires *some* factual allegations in the pleading to support at least the inference of competition. There are none here. *Cf.* FAC ¶¶ 7-41 (setting forth factual allegations).

Plaintiff argues in his opposition that he and Defendants "clearly 'vie for the same dollars from the same consumer group,' since both offer their services in California and since Plaintiffs and Defendants solicit business through offices that are a mere 20 miles apart."[2] Opp'n at 6-7 (citing *TrafficSchool.com*, 653 F.3d at 826) (Docket No. 45). Plaintiff further asserts that he is "likely to be injured through diversion of sales or lessening of goodwill since Plaintiffs and Defendants compete in the same market, California (and even beyond) . . . ." *Id.* However, Plaintiff's argument fails to establish standing because it focuses on geographical market only. It would not matter if Plaintiff and Defendants were located in the same building if each were providing a different form of legal service and therefore were not in competition with each other.

---

[2]Plaintiff alleges that his office is in San Carlos, California, and that Judicate West maintains a place of business in San Francisco, California. FAC ¶¶ 1-4.

The Court further explored the Article III standing issue at oral argument.  On the morning of the hearing, the Court distributed questions to counsel, including the following questions directed to Plaintiff:

> Question 3.   What legal services do you or your law firm provide?  Do you or your law firm provide any alternative dispute resolution services?
>
> Question 4.   How do you compete for the same customers as Defendants Judicate West and Di Figlia?
>
> Question 5.   How do Defendants' alleged misrepresentations injure your business?
>
> Question 6.   How do you satisfy the injury-in-fact requirement of Article III?

Plaintiff's answers to these questions reinforced the Court's skepticism of Plaintiff's Article III standing by making apparent that Plaintiff does not compete with Defendants for the provision of alternative dispute resolution services.  The following colloquy is instructive:

> THE COURT: Are you competing in the same market with the judge [Defendant Di Figlia]?
>
> MR. STAHL: Yes, I believe the --
>
> THE COURT: And tell me what that market is and what the competition is.
> . . .
> MR. STAHL:  . . . Judicate West solicits business through it's [sic] websites for all its people, including Defendant Di Figlia and solicits business, not only through its website in California, but also through its office presence right here in San Francisco.
>
> THE COURT: Let's focus on that business that it solicits. Are you in that business?
>
> MR. STAHL: I believe it is a range of business.  Mediation –
>
> THE COURT: Let me have a "yes" or "no" on that one.  That's answerable: "Yes" or "no."
>
> MR. STAHL: Yes.
>
> THE COURT: How?
>
> MR. STAHL: I solicit business to mediate among parties, to provide my services in that regard.
>
> THE COURT: And how do you solicit?  Do you have a website

United States District Court
For the Northern District of California

1    that solicits that business?

2    MR. STAHL: I do have a website, but my website is not targeted
3    at that line of business.  I do have practice --

     THE COURT: How do you then solicit that business?
4
     MR. STAHL: Through personal offering and presenting it to
5    people and introducing myself to offer that type of business.

6    THE COURT: And how much on-site business have you had in
     the last year?
7
     MR. STAHL: Well, my practice is a mix, and it is difficult to
8    carve that out in terms of precise numbers.  So I have had --

9    THE COURT: Let's have imprecise numbers.

10   MR. STAHL: So far it is small.  But I've had several instances --

11   THE COURT: Small is not a number.

12   MR. STAHL: I don't have a precise number available.  I would
     note --
13
     THE COURT: More than one percent?
14
     MR. STAHL: I believe so . . .
15   . . .
     THE COURT: Well, let's march down those questions because I
16   don't believe you've addressed them.

17   MR. STAHL: Okay. . . .  No. 3, I believe I addressed that. . . .

18   THE COURT: Well, do it again then.

19   MR. STAHL: Okay.  My office provides a mix of legal services.
     It is intellectual property, commercial, legal services.  It includes
20   intellectual property services in terms of patent prosecution,
     trademark prosecution.  It includes litigation.  It includes
21   agreement work.  It includes mediation between individuals or
     parties or companies.  And so it is a mix of practices that I pursue
22   in my office.  Question No. 4 simply goes to the issue of how
     advertisement and statement by participants in competition affect
23   other competitors.
     . . .
24   Now, in the mediation field, a vendor like Judicate West has a
     very large presence, and is for all competitors, small competitors
25   like myself, a serious problem.  So if a large competitor like that
     with so many providers is not truthful about the quality of
26   services, accomplishments of providers, that makes competition
     considerably harder for other competitors.  And on the injury
27   prong under Article III in Question 6, I believe that the
     requirement of a likelihood of damage, at a minimum, is satisfied
28   in view of the strong dominance of a provider like Judicate West

7

**United States District Court**
For the Northern District of California

1   in the market and the difficulty that entails for other competitors
2   to establish and grow their business.

3   THE COURT: If I understand you, you don't advertise for
    alternative dispute resolution cases, but you have personal
4   relationships and contacts, and you explore this responsibility in
    the course of your business; is that correct?

5   MR. STAHL: No, your Honor.

6   THE COURT: Tell me how you're in the alternative dispute
    resolution business.

7

8   MR. STAHL: I do not have it on my website.

9   THE COURT: Tell me how you're in the alternative dispute
    resolution business.  Answer that as directly as you can.

10  MR. STAHL: I present it to people.  I offer it to people.  I
    introduce it to people.

11

12  THE COURT: On what occasions?

13  MR. STAHL: In talking to people by telephone and in meetings.
    So I do advertise on a, you know, person-to-person basis.  I do
    not send out fliers.  I do not put an add [sic] in the newspaper, but
14  I do advertise it in that way.

15  THE COURT: And in advertising it in that way, when was your
    last alternative dispute resolution case?

16

17  MR. STAHL: I have mediated --

    THE COURT: When was -- I'll ask it again. When was your last
18  alternative dispute resolution case?  What point in time?

19  MR. STAHL: The closest in answering that question, it was a
    mediation effort, and I'm not sure whether the Court considers
20  that an alternative dispute resolution case.  Would mediation
    effort fall under the question of the Court?

21

22  THE COURT: Tell me what it was and when it was and I'll --

23  MR. STAHL: It was a mediation effort among different entities
    that I cannot go into detail because it is confidential, and the
    parties do not want it disclosed.  But it was a mediation effort
24  among entities in the Los Angeles area.  And it was this year.

25  THE COURT: Was one of those entities your client or both of
    them your client or what?

26

27  MR. STAHL: One of them was my client and the other one I was
    assisting with, yes.

28  THE COURT: And was the other entity represented by counsel?

United States District Court
For the Northern District of California

1    MR. STAHL: The other entity did have an attorney, yes.

2    THE COURT: Did that attorney represent that entity in these
     negotiations in which you were participating?

3
4    MR. STAHL: I'm not sure.  I'm not sure whether that was the
     case.

5    Rep. Tr. at 15:17-21;16:9-17:20,19:15-20:5; and 22:16-25:5.[3]  When asked to describe the

6    last time he served as a mediator, Plaintiff appears to have stated that his mediation effort

7    was in his capacity as an attorney representing parties in a mediation, not as serving in the

8    role of a mediator (such as Judge Di Figlia), or arranging for the provision of mediation

9    services (such as Judicate West).

10       Counsel for Defendant identified the key problem with Plaintiff's responses for

11   standing purposes:

12       MR. KOODRICH: . . . Mr. Stahl has not given the Court a
         straight answer to Questions 3 and 4.  As shown on Judicate
13       West's website in its moving papers, Judicate West offers ADR
         services, including mediation, arbitration and private judging.
14       Judicate West is not a law firm.  It does not represent clients in
         litigation.
15
         Mr. Stahl has not alleged that he served as an arbitrator, as a
16       mediator, or a private judge.  Mr. Stahl thus does not buy [sic] for
         the same dollars as Judicate West.  No potential client of Mr.
17       Stahl is going to hire Judicate West to represent it in a lawsuit
         because Judicate West does not offer those services.
18   ────────────────────

19       [3]In the colloquy excerpted above, Plaintiff gave evasive answers to relatively simple
     questions about whether he acts as a mediator or otherwise competes with Defendants.  This
20   is not the first time a court has found Plaintiff to be evasive.  On February 15, 2013, less than
     two months before Plaintiff initiated this false advertising case, the San Diego Superior Court
21   ordered the appointment of Defendant Di Figlia as a discovery referee in *Stahl Law Firm v.
     Apex Medical Technologies, Inc. et al.* (Case No. 37-2010-00097839-CU-CO-CTL),
22   pursuant to California Code of Civil Procedure section 639.  Docket No. 36-3.  In
     Attachment 2a to the Order Appointing Referee, Judge William S. Dato explained that
23   Stahl's conduct during discovery warranted the appointment of a discovery referee.  Judge
     Dato found that during his deposition, Stahl was "generally unable or unwilling to answer
24   relatively simple questions about the documents he produced" and "consistently frustrated
     defense counsel's legitimate efforts by providing exceedingly evasive responses" on other
25   topics.  Order Appointing Referee, Docket 36-3 at 5-6.  Judge Dato deemed this conduct
     "unacceptable gamesmanship of the highest order."  *Id.* at 6.  The Court does not take
26   judicial notice of the "truth of the facts recited" by Judge Dato in Attachment 2a, but rather
     judicially notices the fact that Attachment 2a exists and was the basis for Judge Di Figlia's
27   appointment as a discovery referee, "which is not subject to reasonable dispute over its
     authenticity."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (internal
28   quotations omitted).

9

United States District Court
For the Northern District of California

1
2
3
4
5

> No potential client of Mr. Stahl is going to hire Judicate West to file a patent application because Judicate West does not offer those services.  Finally, representing a client in an ADR proceeding is not the same as being an ADR services provider such as Judicate West . There is [sic] separate roles. An attorney represents the party, and Judicate West arranges the ADR services.  For all these reasons, Mr. Stahl is not a direct competitor . . .

6   *Id.* at 26:1-22.

7          Based on all of the above, the Court finds that Plaintiff has failed to allege or

8   otherwise indicate that he competes with Defendants for the provision of alternative dispute

9   resolution services.  Plaintiff has therefore failed to establish that he has suffered or will

10  suffer an Article III injury in fact as a competitor.[4]  Because Plaintiff has failed to allege facts

11  giving rise to sufficient Article III standing, the Court must dismiss the FAC for lack of

12  subject matter jurisdiction.

13

14  **II.     Dismissal with Leave to Amend**

15          Leave to amend shall be freely given "when justice so requires."  Fed. R. Civ. P.

16  15(a)(2).  "The decision of whether to grant leave to amend nevertheless remains within the

17  discretion of the district court, which may deny leave to amend due to 'undue delay, bad faith

18  or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

19  amendments previously allowed, undue prejudice to the opposing party by virtue of

20  allowance of the amendment, [and] futility of amendment.'"  *Leadsinger, Inc. v. BMG Music*

21  *Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

22  "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that

23  the complaint could not be saved by any amendment."  *Maya*, 658 F.3d at 1072 (citing

24

_____

25          [4]To establish Article III standing the plaintiff must not only establish injury in fact but
26  also causation by alleging facts showing the injury is "fairly traceable to the challenged
    action of the defendants" and redressability in that the relief sought will remedy plaintiff's
27  injury. *Lujan*, 504 U.S. at 560-61.  Causation and redressability analysis here are derivative
    of the injury in fact finding. *TrafficSchool.com,* 653 F.3d at 825.  Accordingly, the Court
28  cannot analyze causation or redressability because Plaintiff has failed to establish an injury in
    fact.

United States District Court
For the Northern District of California

1  *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.,* 616 F.3d 963, 972

2  (9th Cir. 2010)).

3      The Court is inclined to believe that granting Plaintiff leave to amend his complaint

4  would be futile.  Plaintiff's failure to answer simple questions during oral argument about

5  whether he has a mediation practice or how he otherwise competes with Defendants suggests

6  that no amendment can cure the fatal deficiency that he does not compete with Defendants as

7  an alternative dispute resolution provider.  *Cf. Animal Legal Defense Fund v. HVFG LLC*,

8  No. C 12-05809 WHA, 2013 WL 1563215, at *5 (N.D. Cal. Apr. 12, 2013) (dismissing

9  plaintiff advocacy organization without leave to amend on grounds that no re-pleading could

10  cure the deficiency that the advocacy organization was not a business competitor to

11  defendant and therefore lacked statutory Lanham Act false advertising standing).  However,

12  out of an abundance of caution, the Court will allow Plaintiff an opportunity to amend his

13  complaint with specific factual allegations that address Article III standing.

14      If Plaintiff chooses to file an amended complaint, he must also consider that, to have

15  standing to sue under the Lanham Act, he must allege specific facts – and not simply legal

16  conclusions – that show "(1) a commercial injury based upon a misrepresentation about a

17  product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to

18  compete with the defendant."  *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club,*

19  *Inc.,* 407 F.3d 1027, 1037 (9th Cir. 2005); s*ee also TrafficSchool.com*, 653 F.3d at 826.

20      Plaintiff must also consider the heightened pleading requirements of Rule 9(b).  While

21  the Ninth Circuit has yet to decide whether these requirements apply to false advertising

22  claims under the Lanham Act, it has applied Rule 9(b) to other types of false advertising

23  claims.  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule

24  9(b) to claim for false advertising under California Business and Professions Code section

25  17200); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1102-04 (9th Cir. 2003) (applying

26  Rule 9(b) to claim for false advertising under California Business and Professions Code

27  section 17500).  Many district courts have extended these decisions to conclude that Rule

28  9(b) applies to false advertising claims under the Lanham Act.  *E.g., Architectural*

11

United States District Court

For the Northern District of California

*Mailboxes, LLC v. Epoch Design, LLC*, Case No. 10CV974 DMS CAB, 2011 WL 1630809, at *5 (S.D. Cal. Apr. 28, 2011) (collecting cases); *Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.,* 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010).  The Court finds these cases persuasive and will apply Rule 9(b) to any amended complaint filed by Plaintiff.  If Plaintiff chooses to file an amended complaint, he must therefore satisfy Rule 9(b)'s requirement of including "the who, what, when, where, and how" of the alleged false advertising.  *Vess,* 317 F.3d at 1106 (internal quotation marks omitted).

### III.   Defendants' Motions for Attorneys' Fees under the Anti-SLAPP Statute

Because the Court lacks subject matter jurisdiction over the FAC due to Plaintiff's failure to establish Article III standing, it also "lacks the authority to award attorneys' fees." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007); *see also Smith v. Brady,* 972 F.2d 1095, 1097 (9th Cir. 1992) ("[I]f the district court lacked jurisdiction over the underlying suit, 'it had no authority to award attorney's fees.'" (quoting *Latch v. United States*, 842 F.2d 1031, 1033 (9th Cir. 1988) (footnote omitted))); *Skaaning v. Sorensen*, 679 F. Supp. 2d 1220, 1223-24 (D. Haw. 2010) (collecting cases).  Thus, the Court cannot consider Defendants' motions for attorneys' fees at this time.  If Plaintiff files an amended complaint that adequately alleges jurisdiction, the Court will consider the motions, which have been fully briefed and argued, at that time.

**CONCLUSION**

For the foregoing reasons, the Court DISMISSES Plaintiff's First Amended Complaint with leave to amend.  Plaintiff's amended complaint, if any, shall be filed on or before **October 10, 2013**.  The Court reminds Plaintiff to be mindful of Rule 11 of the Federal Rules of Civil Procedure as he determines whether to file an amended complaint.  If a timely amended complaint is not filed, this case will be dismissed for lack of subject matter jurisdiction and the Clerk will enter judgment and close the file.

        IT IS FURTHER ORDERED that the case management conference scheduled for

September 30, 2013, is hereby continued to **November 4, 2013**.  The parties shall file a joint

case management conference statement on or before **October 28, 2013**.

**IT IS SO ORDERED.**

Dated:   09/12/13
                                        _____
                                        THELTON E. HENDERSON, JUDGE
                                        UNITED STATES DISTRICT COURT

**United States District Court**
For the Northern District of California

13