IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STAHL LAW FIRM, et al.,

    Plaintiffs,

v.

JUDICATE WEST, et al.,

    Defendants.

NO. C13-1668 TEH

ORDER DISMISSING CASE FOR LACK OF STANDING

This matter came before the Court on November 25, 2013, on Defendants' motions to dismiss. After carefully considering the parties' written and oral arguments, the allegations in the Second Amended Complaint, and relevant law, the Court now DISMISSES with prejudice Plaintiffs' Second Amended Complaint for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court DENIES Defendants' previous motions for prevailing party attorneys' fees under California's anti-SLAPP statute because the Court does not have the authority to award attorneys' fees in a suit over which it has no jurisdiction.

**BACKGROUND**

Because the parties are familiar with the facts of the case and the procedural history, the Court offers here only a brief summary. *See* Docket No. 56; *Stahl Law Firm v. Judicate West. et al.*, No. C13-1668 TEH, 2013 WL 4873065 (N.D. Cal. Sept. 12, 2013). On April 12, 2013, Plaintiffs – attorney Norbert Stahl and his law firm, the Stahl Law Firm[1] – filed suit against Defendants Judicate West and Judge Vincent DiFiglia (Ret.) (collectively,

---

[1] While Plaintiff refers to himself and his law firm in the plural, for simplicity, the Court refers to both as "Plaintiff."

"Defendants"). Plaintiff's complaint included four causes of action: unfair competition under the Lanham Act, 15 U.S.C. § 1125; unfair competition under California Business and Professions Code sections 17200 *et seq.*; fraud; and negligence. On June 21, 2013, Defendants filed special motions to strike Plaintiff's state law claims under California's anti-SLAPP statute, California Code of Civil Procedure section 425.16. Defendants also moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Rather than oppose the motions, on June 25, 2013, Plaintiff subsequently filed his First Amended Complaint ("FAC"), which eliminated the California causes of action and retained only the federal cause of action under the Lanham Act, 15 U.S.C. § 1125. Claims brought pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B),[3] are generally known as "false advertising" or "trade libel" claims. *Zenith Elec. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1347-48 (Fed. Cir. 1999). S*ee also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:24 (4th ed. June 2013).

The FAC alleged that Defendant Judicate West is a provider of private dispute resolution services and sponsors neutrals, including retired judges such as Defendant DiFiglia, to serve as mediators and arbitrators. FAC ¶¶ 7-14. The gravamen of Plaintiff's Lanham Act claim was that both Defendants misrepresented their qualifications, experience, and reputation by failing to reveal in advertising or on Judicate West's website a January 9,

---

[2] All references to Rules hereinafter refer to the Federal Rules of Civil Procedure unless otherwise specified.

[3] Section 43(a) provides, in relevant part:
>   (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>   . . .
>   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>   . . .
>   shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

2

2007 opinion of the California Commission on Judicial Performance in which DiFiglia was issued a public admonishment. FAC ¶¶ 21-41. The FAC contained only conclusory allegations that "Plaintiffs and Defendants compete for providing legal services" and that Defendants "have made false and misleading statements about their services that harmed Plaintiffs' ability to compete." FAC ¶¶ 44-45. Plaintiff did not allege in the FAC that he is a provider of private dispute resolution services – like Judicate West – or that he is a mediator – like DiFiglia. These omissions are important because in a Lanham Act false advertising suit, "a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (internal quotations and citation omitted).

     In July 2013, Defendants withdrew their motions to strike and to dismiss the original complaint and instead moved to dismiss the FAC pursuant to Rule 12(b)(6). Docket Nos. 31-33, 35. Defendants additionally moved for prevailing party attorneys' fees on their previously filed (and withdrawn) motions to strike pursuant to the California anti-SLAPP statute. Docket Nos. 39, 42. The Court heard argument on August 26, 2013. Prior to the hearing, the Court distributed questions to counsel, including questions directed to Plaintiff to ascertain whether Plaintiff, in fact, provides alternative dispute resolution services, how he competes for the same customers as Defendants, how Defendants' alleged misrepresentations injured his business, and how his conclusory pleadings satisfied the injury-in-fact requirement of Article III. *See* 2013 WL 4873065, at *3. During the extensive colloquy that followed, Plaintiff was unable or unwilling to answer simple questions about whether he has a mediation practice or how he otherwise competes with Defendants for the provision of alternative dispute resolution services. 2013 WL 4873065, at *3-6. The Court found that Plaintiff failed to allege that he competes with Defendants for the provision of alternative dispute resolution services, and therefore failed to plead an injury-in-fact sufficient to establish Article III standing. The Court therefore dismissed the FAC *sua sponte* for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), but granted Plaintiff leave to amend his

3

1  complaint to include specific factual allegations that could establish his Article III standing.
2  2013 WL 4873065, at *6. *See also Warth v. Seldin*, 422 U.S. 490, 501-02 (1975) (in
3  determining constitutional standing, "it is within the trial court's power to allow . . . the
4  plaintiff to supply, by amendment to the complaint . . . further particularized allegations of
5  fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's
6  standing does not adequately appear from all materials of record, the complaint must be
7  dismissed.") The Court additionally declined to rule on Defendants' motions for anti-SLAPP
8  attorneys' fees because it lacked jurisdiction.

9        On September 27, 2013, Plaintiff filed his Second Amended Complaint ("SAC").
10  Docket No. 58. The SAC is identical to the FAC, with two exceptions: Plaintiff now alleges
11  "Plaintiffs offer mediation services and Plaintiffs' ability to compete for mediation services is
12  adversely impacted by Defendants' false and misleading advertising," SAC ¶ 45, and
13  "Defendants' false and misleading statements in their internet advertising about their services
14  harmed Plaintiffs' ability to compete," SAC ¶ 46.

15        Defendants moved to dismiss the SAC pursuant to Rule 12(b)(1) on the grounds that
16  Plaintiff fails to allege Article III standing and pursuant to Rule 12(b)(6) because Plaintiff
17  fails to plead a Lanham Act claim. Defendant DiFiglia also moved to transfer venue in the
18  alternative.

19        On November 25, 2013, the parties appeared for oral argument on the motions. In
20  response to the Court's questions[4], Plaintiff acknowledged that he: has never sponsored

---

[4]The Court posed the following questions to Plaintiff:

1. In the Second Amended Complaint you state that you offer "mediation services." Describe with particularity what mediation services you offer.
2. Do you sponsor other neutrals, arbitrators, and mediators besides yourself? Do you maintain and administer a program that sponsors these other alternative dispute resolution professionals?
3. Do you serve as a mediator (i.e. act as a third party between two contending parties with a view toward reconciling them or persuading them to adjust or settle their dispute)? Note this definition does not include whether you have represented a party in a dispute before a mediator.
4. If you serve as a mediator, how many times since 2010 have you served as a mediator?
5. How do you advertise that you mediate or sponsor ADR services?

4

another neutral, aside from himself; has not had any cases where he served as a mediator under the definition provided by the Court in Question 3; and has only been involved in mediations where has represented a client as opposed to acting as a neutral.  He represented that he advertises his services as a mediator to individuals over the phone or in person, but has not had any cases come in from the public in this manner.

**DISCUSSION**

**I.     Rule 12(b)(1) Motion to Dismiss for Lack of Standing.**

   **A.     Legal Standard.**

A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  To establish Article III standing, a plaintiff must establish injury-in-fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).  To establish an injury in fact, the plaintiff must show that he or she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560.

When ruling on a motion to dismiss for lack of standing, the Court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party."  *Warth*, 422 U.S. at 501.  Nonetheless, the plaintiff has the burden of establishing Article III standing.  *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court must] presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).  However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact."  *Maya*, 658 F.3d at 1068.

5

### B.     Plaintiff's Lack of Article III Standing.

The question before the Court is whether Plaintiff has succeeded on amendment in alleging facts sufficient to establish Article III injury in a false advertising suit. He has not. "In a false advertising suit, a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc.*, 653 F.3d at 825 (internal quotations and citation omitted). The Court previously held that Plaintiff's bid for Article III standing failed because the FAC rested only on bare legal conclusions that "Plaintiffs and Defendants compete for providing *legal services*" and that Defendants "made false and misleading statements about their services that harmed Plaintiffs' ability to compete." FAC ¶¶ 44-45 (emphasis added). The Court held that Plaintiff lacked Article III standing because he had failed to allege any facts showing that he: competes with Defendant Judicate West as an administrator or provider of ADR services, competes with Defendant DiFiglia as a mediator, or generally how he could be harmed as a competitor by Defendants' alleged false advertising. In sum, the Court concluded "[o]n a false advertising claim, Article III injury requires *some* factual allegations in the pleading to support at least the inference of competition. There are none here." 2013 WL 4873065, at *3.

The principal case in this Circuit addressing Article III standing in the false advertising context is *TrafficSchool.com,* 653 F.3d 820. In that case, plaintiffs – two providers of driver's education courses – alleged that defendant DMV.org committed false advertising in violation of the Lanham Act by misleading consumers into believing that referrals to certain driver's education courses contained on DMV.org's website were actually recommended or endorsed by departments of motor vehicles from various states. They were not. DMV.org earned money by selling sponsored links and collecting fees for referring visitors from its website to vendors of traffic school courses and driver's education lessons. The plaintiffs competed with DMV.org because they marketed and sold traffic school and driver's education courses directly to consumers and vied with DMV.org for referral revenue. 653 F.3d at 824. Plaintiffs argued that DMV.org's misleading appearance of

6

government endorsement enabled it to capture a larger share of the referral market – to plaintiffs' detriment. *Id.* at 826.

The Ninth Circuit reversed the district court's grant of summary judgment for lack of standing against plaintiffs, holding that the *TrafficSchool.com* plaintiffs established sufficient injury for Article III standing in several ways. First, a plaintiff may prove his injury by relying on "actual market experience and *probable* market behavior." *Id.* at 825 (citation omitted) (emphasis in original). The *TrafficSchool.com* plaintiffs introduced evidence that they "compete with defendants for referral revenue" such that "[s]ales gained by one are thus likely to come at the other's expense." *Id.* at 826. The court found that this evidence of "direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't 'conjectural' or 'hypothetical.'" *Id.* Second, in the absence of data about lost sales, plaintiffs presented testimony and survey evidence that indicated the appearance of official DMV endorsement would influence consumer choice, which is the type of evidence that could "establish an injury by creating a chain of inferences" showing how defendant's website could harm plaintiffs' businesses. *Id.* at 825. On these facts, the *TrafficSchool.com* plaintiffs established sufficient injury for Article III standing to survive summary judgment.

While at the motion to dismiss stage, Plaintiff is not necessarily expected to prove lost sales or present evidence, he still must allege facts that plausibly show how he could be injured as a competitor, which might include allegations of injury through probable market behavior or by creating a chain of inferences that show how Defendants' actions could injure Plaintiff's business. *Id.* For example, in *Animal Legal Def. Fund v. HVFG LLC* ("*ALDF*"), 939 F. Supp. 2d 992, 996 (N.D. Cal. 2013), the district court denied a motion to dismiss for lack of standing because it found that a competitor had Article III standing to pursue its Lanham Act claim because its complaint sufficiently alleged Article III injury, causation, and redressability. Discussion of *ALDF* is instructive.

In *ALDF*, plaintiffs Animal Legal Defense Fund, a nonprofit advocacy organization, and Regal Vegan, Inc. ("Regal Vegan"), a food supplier, alleged that defendants Hudson Valley Foie Gras, LLC, and four of its officers (collectively "Hudson Valley") violated the

7

Lanham Act as well as California's unfair competition and false advertising laws by marketing their foie gras as "the humane choice." 939 F. Supp. 2d at 996-97. According to plaintiffs, this characterization misrepresented the truth because Hudson Valley's foie gras was not produced humanely. *Id.* Hudson Valley moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

Regal Vegan asserted facts that showed its product competes with foie gras. Regal Vegan stated that it produced products that were marketed as animal-product alternatives, were meant to substitute for animal-based favorites such as foie gras, were specially formulated in order to "satisfy the same craving some have for pâtés" and, presumably, to compete for consumers who might otherwise crave, and buy, actual foie gras. *Id.* at 998. Its product's name, Faux Gras, was a play on "foie gras" and its website described its product as a "pâté." *Id.* Regal Vegan's pleadings also relied on surveys that showed that customers will preferentially choose otherwise-identical "humane" products over those that are not humane and that meat substitutes like Regal Vegan's product have gained a significant market share in the humane products market space. *Id.*

The court determined that Regal Vegan alleged facts showing that it did and does intend its product to replace foie gras and alleged that survey data supported that it competed in the same market space; accordingly, the Court held that Regal Vegan alleged sufficient facts in its pleadings that it may be competing with Hudson Valley for the same pool of potential customers: those interested in purchasing humanely produced pâtés. *Id.* Thus, Regal Vegan sufficiently plead injury-in-fact. The Court held that Regal Vegan's allegations satisfied the causation prong of standing analysis because in the market for humanely produced pâtés, a statement by one competitor that its product is "humane," if in fact it were not, would plausibly disadvantage its humane competitor. *Id.* The court similarly concluded that the injuries were redressable if an injunction were to issue, and on the basis of allegations of injury, causation, and redressability found that Regal Vegan had Article III standing to bring its claims.

In contrast to the abundant factual allegations in *ALDF*, Plaintiff's threadbare allegations here, even when viewed in a light most favorable to Plaintiff, do not establish an injury-in-fact.  Plaintiff here alleges only that he and Defendants "compete for legal services," specifically that Plaintiff offers "mediation services" and that Plaintiff's ability to "compete for mediation services is adversely impacted by" Defendants alleged false and misleading advertising, which "harmed Plaintiff's ability to compete."  SAC ¶¶ 45-46.  While on a motion to dismiss, a court may presume that "general factual allegations of injury resulting from the defendant's conduct may suffice, that is "not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact."  *Maya,* 658 F.3d at 1068 (internal quotations and citations omitted).  Given that Defendant Judicate West is a provider of private dispute resolution services and also sponsors neutrals, SAC ¶¶ 7-14, and DiFiglia is a neutral, SAC ¶¶ 8, 16, Plaintiff needed to allege some facts that show how he competes with each in these respective sub-specialties beyond the bald assertion that he too offers "mediation services."  While the Court could read into Plaintiff's vague invocation of "mediation services" to embrace the specific non-alleged facts that he too administers ADR services and sponsors neutrals like Judicate West or that he acts as a mediator like DiFiglia, Plaintiff provides no factual allegations that support such an inference or that explicitly state what "mediation services" he actually provides.  The Court notes that it previously observed that Plaintiff was unable or unwilling to give direct answer to simple questions related to these issues at the previous hearing.  *See* 2013 WL 4873065, at *3-6.  Tellingly, during the November 25, 2013 oral argument Plaintiff acknowledged that he has never sponsored another neutral and has never served as a neutral in a mediation where he did not represent an existing client.

Unlike the Regal Vegan plaintiff in *ALDF*, Plaintiff here does not allege facts showing that he competes with Judicate West and DiFiglia for the specific services each provide, nor does he prevent survey data that describe the likely marketplace, nor does he allege facts sufficient to show that he may be competing with Defendants for the same pool of potential customers.  He fails to allege facts describing how he advertises or how Defendants' alleged

9

false advertising might siphon away customers from him. He does not allege that he is a *direct* competitor to either Defendant, or otherwise show that he has a "stake in the outcome of the suit, so [his] injury isn't 'conjectural' or 'hypothetical.'" *TrafficSchool.com,* 653 F.3d at 825-26.

Although "a false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim [under] 15 U.S.C. § 1125(a)," *id.* at 825, Plaintiff nowhere even alleges "a chain of inferences showing how [Defendants' alleged] false advertising could harm [Plaintiff's] business." *Id.* Plaintiff acknowledged in open court that he has never sponsored a mediator aside from himself and has never mediated as a neutral before. Although he represented that he advertises his mediation services in person and over the phone – and thus could conceivably compete with Defendants in the future – factual allegations supporting that assertion are not contained in the SAC. Indeed, without more, such an assertion is the precise type of hypothetical or conjectural – rather than actual or imminent – injury that the standing doctrine seeks to constrain. *Lujan*, 504 U.S. at 560.

In sum, Plaintiff fails to allege in his SAC that he suffered or will likely suffer the type of injury-in-fact required to establish Article III standing in the false advertising context. Accordingly, the Court need not analyze causation or redressability because Plaintiff's failure to establish an injury-in-fact dooms his bid for Article III standing. The Court GRANTS Defendants' Rule 12(b)(1) motions to dismiss for lack of jurisdiction. The dismissal is with prejudice because Plaintiff was already given an opportunity to amend and further leave would be futile. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir. 1998).

## II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

Even if the Plaintiff had alleged facts sufficient to establish Article III standing, the Court would dismiss Plaintiff's claim under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

10

### A. Legal Standard.

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.,* 487 F.3d 1246, 1249 (9th Cir. 2007). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

### B. Plaintiff's Failure to Plead a Lanham Act False Advertising Claim.

The five elements of a false advertising claim under Section 43(a) of the Lanham Act are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). The Lanham Act permits "any person" to sue if he "believes that he . . . is *likely* to be damaged." 15 U.S.C. § 1125(a) (emphasis added). A competitor need not prove past injury and may sue to enjoin present conduct that might result in future injury. *Harper House, Inc. v. Thomas Nelson,*

11

1 *Inc.,* 889 F.2d 197, 210 (9th Cir. 1989).  But a plaintiff must still meet the minimum pleading
2 requirements and allege facts that would satisfy the elements of Section 43(a).  Plaintiff here
3 does not.[5]

4 Plaintiff specifically fails to allege facts that satisfy the fifth element of Section 43(a).
5 He fails to allege in the SAC – beyond mere legal conclusions – facts that show he has been
6 or is likely to be injured as a result of Defendants' alleged false statements, either by direct
7 diversion of sales from Plaintiff to Defendants or by a lessening of the goodwill associated
8 with his services.

9 Plaintiff erroneously contends that the SAC contains allegations that satisfy all
10 elements of a Lanham Act false advertising claim.  Regarding the fifth element of Section
11 43(a), he argues:

> Plaintiffs are likely to be injured through diversion of sales or
> lessening of goodwill since Plaintiffs and Defendants compete in
> the same market, California (Plaintiffs office is in San Carlos,
> San Mateo County, while Defendants solicit business through an
> office in San Francisco  – or about 20 miles apart).  Also,
> Plaintiffs and Defendants vie for sales of mediation services
> because Plaintiffs are offering mediation services (SAC, ¶45) and
> Defendants are offering mediation services, and do not dispute it.

17 Plfs. Opp. at 4-5, Docket No. 63.  Plaintiff's SAC contains no *factual* allegations that he has
18 been or is likely to be injured as a result of the Defendants' alleged false or misleading
19 statements.  He nowhere alleges in the SAC facts supporting his legal assertions in his brief
20 that he has or will experience "a direct diversion of sales from itself to defendant or by a
21 lessening of the goodwill associated with its" services.  The Court is not "bound to accept as
22 true" this or Plaintiff's other "legal conclusion[s] couched as [] factual allegation[s]."  *Iqbal*,
23 556 U.S. at 678.  *See, e.g.* SAC ¶ 47 (concluding on information and belief without
24 supporting factual allegation that Defendants alleged misleading statements "actually
25 deceived or have a tendency to deceive a substantial segment of their audience"); SAC ¶ 48

---

27 [5]While the Court previously stated it would apply the heightened pleading standard of
Rule 9(b) to any amended complaint filed by Plaintiff, 2013 WL 4873065, at *7, the Court
28 notes that the SAC fails even under the more liberal pleading standard of Rule 8 for the
reasons set forth below.

12

(concluding on information and belief without supporting factual allegation that Defendants' alleged misleading statements are "material, in that [they are] likely to influence" those wanting to acquire legal services); SAC ¶ 49 ("Defendants' acts have caused and continue to cause competitive harm to Plaintiffs'" without supporting factual allegation).

Here, Plaintiff's "formulaic recitation of the elements of a [Lanham Act false advertising] cause of action will not do." *Twombly,* 550 U.S. at 570. Because Plaintiff has not made factual allegations beyond the mere legal conclusion that he "has been or is likely to be injured as a result of the alleged false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products," *Quattrocchi*, 673 F.3d at 1110, the Court would grant Defendants' motions to dismiss with prejudice pursuant to Rule 12(b)(6). However, the Court need not reach this alternative disposition because the Court lacks jurisdiction pursuant to Article III, and dismisses with prejudice on that basis. The Court also DENIES as moot Defendant DiFiglia's motion to transfer venue.

### III. Jurisdictional Inability To Award Attorneys' Fees.

Defendants previously moved for prevailing party attorneys' fees under California's anti-SLAPP statute based on the original complaint, which contained California causes of action, and which Plaintiff withdrew after Defendants filed their anti-SLAPP motions. The Court declined to rule on the issue of award of fees under the anti-SLAPP statute because it lacked jurisdiction. 2013 WL 4873065, at *8 (citing *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007) ("Because the Court lacks subject matter jurisdiction over the FAC due to Plaintiff's failure to establish Article III standing, it also lacks the authority to award attorneys' fees"). As Plaintiff continues to lack Article III standing and thus the Court continues to lack jurisdiction in this matter, the Court is without authority to award the anti-SLAPP attorneys' fees requested by Defendants. These motions are therefore DENIED. Similarly, the Court DENIES Defendant DiFiglia's request for leave to file a separate motion for attorneys' fees under the Lanham Act. Mot. at 14, Docket No. 60.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss the SAC for lack of Article III standing. The dismissal is with prejudice. The Court DENIES Defendants' previously filed motions for prevailing party anti-SLAPP attorneys fees' for lack of jurisdiction.

On November 13, 2013 Defendant DiFiglia moved for sanctions pursuant to Rule 11. The hearing on the motion is currently set for January 13, 2014. Notwithstanding dismissal of Plaintiff's SAC with prejudice, the Court retains jurisdiction to award sanctions pursuant to Rule 11. *See Branson v. Nott,* 62 F.3d 287, 293 (9th Cir. 1995) (holding that a district court's lack of subject matter jurisdiction does not preclude it from imposing Rule 11 sanctions for filing a frivolous complaint), *cert. denied,* 516 U.S. 1009 (1995); *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997), *abrogated on other grounds as recognized by Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1112 (9th Cir. 2011). Accordingly, the Clerk is directed to enter judgment.

**IT IS SO ORDERED.**

Dated:  11/27/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT